d

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

*IN RE*: CHRISTIAN D. CHESSON

CIVIL ACTION NO. 5:18-MC-00032

CHIEF JUDGE HICKS

MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

This attorney disciplinary matter is before the Court for full consideration under Rule 83.2.10 of the Local Rules for the United States District Court for the Western District of Louisiana. United States Bankruptcy Judge Robert R. Summerhays[1] referred attorney Christian D. Chesson ("Chesson") to the Court for disciplinary action. Judge Summerhays recommending that Chesson be suspended from practice before the Western District of Louisiana for one year. (Doc. 1).

During the pendency of this matter, Chesson served the period of suspension initially imposed by Judge Summerhays along with a lengthy additional period of suspension. Chesson also satisfied other – and extensive – financial and remedial requirements. And through these steps and his own representations, Chesson has offered assurance that he understands the gravity of the underlying misconduct, and the requirement to prevent any such misconduct in the future. Accordingly, no additional sanctions should be imposed.

---

[1] Judge Summerhays became a United States District Judge in the Western District of Louisiana on September 19, 2018.

## I.    Background

The United States Trustee for Region 5 (the "Trustee") brought an action against Chesson and his law firm.  The Trustee alleged Chesson's employees impersonated clients filing Chapter 13 cases during statutorily mandated prefiling credit counseling briefings.  More particularly, the Trustee Chesson's staff filed false Credit Counseling Verifications ("Verifications")[2] with the bankruptcy court in at least 11 Chapter 13 cases filed in the Lake Charles Division of the Western District of Louisiana, from July 2014 through April 2016.  (Doc. 1-1).

Judge Summerhays largely agreed, finding that Chesson's employees engaged in a scheme to circumvent the Bankruptcy Code's credit counseling requirements by filing false Verifications, using Chesson's electronic signature.  (Doc. 1-1, pp. 26-29).  Judge Summerhays further found that unsigned debt relief agency contracts in seven cases constituted material violations of the requirements of 11 U.S.C. § 528, which requires the execution and provision of such contracts to clients.  (Doc. 1-1, p. 31).

Ultimately, Judge Summerhays concluded that Chesson had: (1) breached his professional duties of oversight of his paralegals; (2) failed to ensure the veracity of the pleadings filed under his electronic signature in the 11 cases; and (3) "acted in bad faith in failing to exercise his professional obligations to oversee his staff and ensure that the documents filed under his signature were true and accurate."  (Doc. 1-1, pp. 29, 30, 31, 35).  Chesson's failure to oversee his staff resulted in:

---

[2] An individual who does not complete the required "briefing" from an "approved budget and credit counseling agency" prior to filing for Chapter 13 relief is not an eligible debtor, and dismissal of the case is mandated.  See 11 U.S.C. § 109(h); 11 U.S.C. § 521(b).

a pervasive scheme to impersonate debtors during credit counseling briefing sessions and to file false Credit Counseling Verifications in at least these eleven cases . . . . Defendants' actions not only resulted in the filing of false pleadings, but resulted in the filing of cases for debtors who were not eligible to file for relief under chapter 13. The court finds Defendants' conduct to be "atypical" and "extraordinary" and to display "dishonesty of belief, purpose or motive." Given the extent of the fraudulent filings with the court, the court concludes that Defendant acted with a "high level of culpability."

(Doc. 1-1, pp. 35-36).

On August 29, 2018, Judge Summerhays ordered that Christian D. Chesson be suspended from practice before the United States Bankruptcy Court for the Western District of Louisiana for 90 days, assessed a civil penalty of $5,000, and barred from filing any new Chapter 13 cases until there was an approved remediation plan. (Doc. 1). In addition, Chesson was ordered to provide the Trustee with an accounting of all fees and expenses collected in the 11 cases; disgorge all fees and expenses; take remedial steps; attend a Trustee-approved education course that includes the ethics and duties of a "debt relief agency"; and turn over copies of all Credit Counseling Verifications with "wet signatures" dated from July 2014 through April 2016 to the Trustee. (Doc. 1).

Judge Summerhays also referred Chesson to the United States District Court for the Western District of Louisiana for further disciplinary action. Judge Summerhays recommended that Chesson be suspended from practice in the Western District of Louisiana for one year. (Doc. 1).

An evidentiary hearing was held before the undersigned. (Doc. 13). Chesson testified he had practiced law for 23 years, and practiced consumer bankruptcy law

for about 20 years. (Doc. 13, p. 15). Chesson stated there are three other attorneys in his office who practice in bankruptcy and other areas of law. (Doc. 13, p. 16). Chesson also had ten staff members. (Doc. 13, p. 16).

Chesson testified that, for a client's initial consultation, the client fills out an intake sheet, meets with Chesson, and discusses their financial situation and bankruptcy options. (Id.). Then the client was provided with a list of additional questions and items Chesson needed, including the credit counseling requirement. (Doc. 13, p. 17). The "Abacus" website was provided to the client with promotion material from Abacus. (Doc. 13, p. 18). Credit counseling is required by law under Chapter 7 and 13, to advise potential individual filers of alternatives to bankruptcy, and to educate them about managing their finances after filing for bankruptcy. (Id.).

Chesson testified that, at the second meeting with a client, the client would provide the requested documents, sign the retainer agreement, and pay the initial fee ($500 to cover filing, the credit counseling course, and an advance fee to the attorney). The client file would then go to Wade Kelly ("Kelly"), an attorney who did bankruptcy work with Chesson. (Doc. 13, pp. 23, 50-51). Chesson's staff would contact the client for any additional information and prepare the pleadings. (Doc. 13, p. 23). Then the clients who had not taken the credit counseling course would be scheduled for it, and would meet with Kelly afterward to work on their plan and go over the pleadings (Doc. 13, pp. 23-24).

Chesson testified that credit counseling is an online course that his clients had the option of taking at his office if they did not otherwise have access to a computer.

4

(Doc. 13, p. 20). Chesson's staff was available to assist the clients who were not computer-literate. (Doc. 13, p. 20). Chesson had a separate office with two computers for clients to use. (Doc. 13, p. 26). The door to that office was never closed. (Doc. 13, p. 27). Chesson saw clients in that office, taking the online course, every day. (Id.).

Chesson was well-aware of the credit counseling requirement. (Doc. 13, p. 18). Chesson also understood – and at the hearing before the undersigned, ably articulated – the basic purpose of the requirement: "[T]o better advise potential people filing bankruptcy of different options and alternatives to bankruptcy, [and] also to provide them information about managing their finances . . . even after filing bankruptcy, if they were to do so." (Id.). Chesson explained – and admittedly understood – that the credit counseling course is a statutory prerequisite to filing for bankruptcy, and that failure to take the course renders a debtor ineligible for bankruptcy. (Doc. 13, pp. 49-50).

Chesson testified that many of the clients' pleadings and documents were signed under penalty of perjury. (Doc. 13, p. 24). Chesson and Kelly explained perjury and bankruptcy fraud to their clients. (Doc. 13, p. 24). There were also signs posted in the offices and meeting rooms, as required by statute, that said "Bankruptcy Fraud is a Crime." (Doc. 13, pp. 24-25). Chesson noted that the clients who did not take the required credit counseling course had signed, under penalty of perjury, a statement verifying completion of the course. (Doc. 13, pp. 25, 52-53).

Chesson first learned there was an issue concerning credit counseling for his clients when he received a copy of the Trustee's proposed complaint. (Doc. 13, p. 25).

Chesson informed Wade of the allegation.  (Id.).  None of their staff admitted knowledge of the scheme, and none of their clients admitted to them that they had not actually taken the credit counseling course.  (Doc. 13, p. 53).  At that time, Chesson could not find any evidence of the scheme.  (Doc. 13, p. 53).

Chesson later discovered that, except for Karla Latour ("Latour"), a former senior paralegal, the employees who had been involved in the scheme were no longer in his employ.  (Doc. 13, pp. 25-26).  Chesson explained to his staff that no one was permitted to take a credit counseling course for a client.  (Doc. 13, p. 28).  Chesson also installed cameras on top of the monitors to ensure that only the client was taking the online course.  (Doc. 13, p. 28).  Clients have to sign an affidavit attesting that they took the credit counseling course.  (Doc. 13, p. 36).  The office employees have to sign agreements of understanding as to the penalties for perjury and that they cannot impersonate, or do, or sign anything on behalf of, the clients.  (Id.).  The office employees also have to take a class once a year.  (Id.).  Latour was removed from bankruptcy cases and now works as a receptionist and assistant to the office manager.[3]  (Doc. 13, pp. 36, 57).  Chesson testified the remediation plan ensures the situation will never happen again within his office.  (Doc. 13, p. 37).

Chesson testified that he never instructed any of his employees to impersonate clients in taking the credit counseling course.  (Doc. 13, p. 27).  Had he discovered any

---

[3] Chesson explained that Latour is a long-time employee who was hired to work on bankruptcy cases due to her prior bankruptcy experience.  (Doc. 13, p. 54).  The other staff employees worked under Latour.  (Doc. 13, p. 55).

of his employees were doing so, he would have fired them immediately. (Doc. 13, pp. 27-28). Moreover, if and after he is reinstated, Chesson will continue to provide copies of certificates, clients' affidavits, and signed contracts to the Trustee. (Doc. 13, p. 37).

Chesson testified that he cooperated with the Trustee and quickly provided all of the documents (3,500 to 4,000 pages) requested. (Doc. 13, p. 29). Chesson also instructed Latour to provide a sworn statement to the Trustee. (Doc. 13, p. 29). However, the Trustee contacted Chesson a week before the evidentiary hearing for reinstatement to say he believed there might be documents missing. (Doc. 13, p. 33). All of those documents except two were found and provided to the Trustee. (Doc. 13, p. 34). Chesson stated he did not intentionally omit documents, but had believed that Chapter 7 documents were not required.[4] (Id.).

Chesson further testified there were seven retainer agreements that were never signed by him. (Doc. 13, p. 21). Chesson did not realize then that his signature was required on the agreements, although it was his practice to sign them. (Id.). Chesson represented those clients, although he had not signed the retainer agreement. (Doc. 13, pp. 21-22). Chesson testified that new office procedures ensure a retainer agreement is signed by the attorney. (Doc. 13, p. 35).

Chesson testified he did not appeal Judge Summerhays's ruling because he believed it was fair. (Doc. 13, p. 30). However, Chesson did not agree with the

---

[4] The omitted documents were certificates of completion and "wet signature" verification forms for the credit counseling course in Chapter 7 cases, filed during the requested time period, subsequent to filing the remediation plan. (Doc. 13, pp. 40-41, 48). The documents were required by the remediation plan. (Doc. 13, p. 40). Although parts of the case files were provided to the Trustee, those particular documents had been omitted. (Doc 13, p. 41).

allegations in the Trustee's complaint that he was involved in a scheme from which he somehow profited.[5] (Doc. 13, p. 30). However, Judge Summerhays did not find Chesson was directly involved in the scheme. (Doc. 13, p. 30). Judge Summerhays also found that Chesson's failure to supervise his staff was tantamount to bad faith. (Doc. 13, p. 44).

Chesson testified that he complied with Judge Summerhays's orders to: (1) provide an accounting on the 11 cases within 14 days; (2) disgorge the fees and expenses within 14 days of the accounting; (3) pay the fine within 14 days; (4) file a written remediation plan within 20 days; (5) take an approved two-hour ethics course; and (6) give the Trustee all original credit counseling verifications between specified dates. (Doc. 13, pp. 31-33). Chesson affirmed that he had not filed any bankruptcies since Judge Summerhays's ruling on August 29, 2018.[6] (Doc. 13, pp. 34, 62). Chesson also had not sought reinstatement with the bankruptcy court, although he had only been suspended for 90 days. (Doc. 13, pp. 34-35).

## II.    Law and Analysis

### A.    The Court may suspend and sanction attorneys for misconduct.

"'Federal courts enjoy the inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *In re* Goode, 821 F.3d 553, 558–59 (5th Cir. 2016) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).

---

[5] Chesson testified that he was unable to work the case out with the Trustee before trial because the Trustee insisted that Chesson admit he had instructed his staff to take the credit counseling courses for his clients. (Doc. 13, p. 59). Chesson maintained that was not true (Doc. 13, p. 59) and Judge Summerhays did not find evidence to support that allegation.
[6] Chesson's attorney clarified that Chesson had engaged in federal case work, but not in prohibited bankruptcy work. (Doc. 13, p. 62).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. Employing this inherent power, courts may discipline, suspend, and disbar attorneys. See In re Goode, 821 F.3d at 559; see also Resolution Trust Corp. v. Bright, 6 F.3d 336, 340 (5th Cir. 1993).

In deciding whether to sanction and what sanction to impose, the Court considers "the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." See In re Sealed Appellant, 194 F.3d at 673 (citing ABA Standard 3.0); see also In re Moity, 2008 WL 104209, at *10 (W.D. La. Jan. 9, 2008) (report and recommendation), subsequently aff'd, 320 Fed. Appx. 244 (5th Cir. 2009). Suspending an attorney is a "quasi-criminal punishment" and "any disciplinary rules used to impose this sanction . . . must be strictly construed resolving ambiguities in favor of the person charged." In re Goode, 821 F.3d at 558 (citing United States v. Brown, 72 F.3d 25, 29 (5th Cir. 1995)).

Courts may also sanction or suspend attorneys pursuant to local rules. See In re Goode, 821 F.3d at 558. The Rules Enabling Act of 1934 provides courts with the broad authority to "prescribe rules for the conduct of [their] business." 28 U.S.C. § 2071(a); see also In re Goode, 821 F.3d at 557.

### B.   A finding of "bad faith" was not necessarily required, but was nonetheless adequately made, as to Chesson's conduct.

As to the issue of bad faith, "[t]he Fifth Circuit distinguishes between sanctions imposed pursuant to a court's inherent power and sanctions imposed pursuant to a district court's local rules." Marks v. Smith, CV 15-5454, 2017 WL 6264981, at *1

(E.D. La. May 22, 2017). "It is well settled that in order for a federal court to sanction an attorney under its inherent powers, it must make a specific finding that the attorney acted in bad faith." _In re_ Goode, 821 F.3d at 559. No such finding need be made when sanctions are imposed pursuant to local rules. Id. Moreover, when a court imposes sanctions premised upon rules of professionalism adopted by local rules, a finding of bad faith is not required. See _In re_ Hermesmeyer, 688 Fed.Appx. 300, 304 (5th Cir. 2017) ("In imposing sanctions, the district court relied on its finding that Hermesmeyer had violated a professional rule, rather than on its inherent power to discipline parties appearing before it.") (citing United States v. Brown, 72 F.3d 25, 27 n.2 & 29 (5th Cir. 1995)).

In the context of attorney discipline, "[b]ad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." Richard v. Inland Dredging Co., LLC, 2016 WL 5477750, *2 (W.D. La. 2016) (quoting Turfgrass Group, Inc. v. Northeast Louisiana Turf Farms, L.L.C., 2013 WL 6145294, *3 (W.D. La. 2013)). Bad faith must be "judged by 'necessarily stringent' standards." Pressey v. Patterson, 898 F.2d 1018, 1021 (5th Cir. 1990) (quoting Batson v. Neal Spelce Associates, Inc., 805 F.2d 546, 550 (5th Cir. 1986)).

However, it is also settled that "specific findings [of bad faith] are unnecessary to understand the misconduct giving rise to [a] sanction, [w]hen bad faith is patent from the record and may be inferred." _In re_ Deepwater Horizon, 643 Fed.Appx. 377,

383 (5th Cir. 2016) (quoting *In re* Sealed Appellant, 194 F.3d 666, 671 (5th Cir.1999)) (internal quotation marks omitted); accord Howard v. Offshore Liftboats, LLC, 13-4811, 2016 WL 2865889, at *8 (E.D. La. May 17, 2016) ("District courts need not make a specific finding of bad faith in every case in which sanctions may be warranted."). For instance, a court's finding that parties committed fraud may constitute a finding of bad faith.  See *In re* Deepwater Horizon, 643 Fed.Appx. at 383.  Likewise, a court's finding that an attorney testified falsely or was deliberately misleading under oath is tantamount to a finding of bad faith.  *In re* Sealed Appellant, 194 F.3d at 672, n. 16 (and cases cited therein).  Stated otherwise, when the record is clear, no "magic words" need be written or spoken.  See LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d 899, 906 (D.C. Cir. 1998).

Here, LR 83.2.10 sets forth this Court's procedures for imposing discipline, which include the preparation of this Court's report and recommendation.  However, LR 83.2.10 does not contain substantive provisions upon which discipline may be imposed.  See *In re* Keating, 2016 WL 8808668, *12 (W.D. La. 2016) (Report and Recommendation), adopted as modified, 2017 WL 1498278 (W.D. La. 2017).  However, Local Rule 83.2.4 – like many similar local rules – adopts and incorporates the Rules of Professional Conduct of the Louisiana State Bar Association (the "LRPC"), "except as otherwise provided by a specific rule of the courts."

Judge Summerhays premised sanctions against Chesson largely upon findings that he violated the LRPC.  Specifically, Judge Summerhays found Chesson violated three rules in the Louisiana Rules of Professional Conduct ("LRPC"): (1) Rule 3.1

regarding filing only meritorious claims or contentions;[7] (2) Rule 5.3(b) defining a lawyer's responsibilities regarding nonlawyer assistance;[8] and (3) Rule 8.4(c) prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation.[9]  A finding of bad faith was not required in this case.  See Law Sols. Chicago LLC v. United States Tr., 592 B.R. 624, 635 (W.D. La. 2018), aff'd sub nom. Matter of Banks, 770 Fed.Appx. 168 (5th Cir. 2019) ("[T]he Bankruptcy Court suspended UpRight under [LR 83.2.4], and the Fifth Circuit has declined to find that a finding of bad faith is required for a court to exercise its authority under the local rules.").

Judge Summerhays also based some of the sanctions imposed upon specific provisions of the Bankruptcy Code, finding that those provisions did not require a finding of bad faith.  That finding was correct based upon a plain reading of those provisions of the Bankruptcy Code.

---

[7] LRPC Rule 3.1 "Meritorious Claims and Contentions":
   A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.  A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

[8] LRPC Rule 5.3. Responsibilities Regarding Nonlawyer Assistance.
   With respect to a nonlawyer employed or retained by or associated with a lawyer: . . .
    (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; . . . .

[9] LRPC Rule 8.4. Misconduct.
   A.    It is professional misconduct for a lawyer to: . . .
         (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Nonetheless, Judge Summerhays found Chesson's actions, in general, were tantamount to bad faith because he completely failed to exercise his professional obligations to oversee his staff and ensure that the documents filed under his signature were true and accurate. Specifically, Judge Summerhays concluded that "Chesson's abdication of his responsibility to oversee and manage the employees who were dealing with his clients rises to the level of bad faith . . . and . . . his profession of ignorance about the conduct of his employees is not a defense to the Trustee's claims." (Doc. 1-1, p. 30).

This Court agrees. The record does not convincingly establish that Chesson specifically directed his staff members to falsify Verifications. However, that means Chesson: (1) either tacitly approved the practice – which he also denies – or simply failed to satisfy his supervisory obligations to an extraordinary extent, and then (2) . filed the false Verifications under his signature, again falling well short of professional obligations. It is undisputed that Chesson caused financial and other injury to his clients, whose bankruptcy proceedings were compromised and then extended in length. Chesson also caused injury to the legal system and interference with the administration of justice. Chesson's pattern of misconduct is tantamount to bad faith, if such a finding had been required.

### C.   Additional sanctions are unwarranted.

Chesson was initially suspended for 90 days, and has remained effectively suspended since August 29, 2018. He has disgorged all fees collected for the eleven cases. He developed and followed a Trustee-approved remediation plan that included

educational classes for himself and his staff.  He took additional measures in his law practice to ensure misconducts and mistakes do not recur.  All but one of the employees who impersonated clients is no longer working for Chesson, and the remaining employee is no longer working directly with bankruptcy cases and clients. In short, and to his credit, Chesson fully complied with Judge Summerhays's sanctions, the Trustee's requests, and the remediation plan.

Finally, during the hearing before this Court, Chesson acknowledged and showed remorse for his misconduct, and assured the Court that it will not recur. Given the measures above, Chesson's assurances are credible and supported.

The suspension imposed, the suspension actually served, the fine paid, and the remedial measures taken by Chesson are adequate to address the underlying misconduct and to deter future misconduct.  Therefore, additional sanctions should not be imposed.

## III.  <u>Conclusion</u>

Because the suspension imposed and actually served, the fine paid and disgorgements made, and the other remedial measures taken are adequate to address the misconduct and deter future misconduct, IT IS RECOMMENDED that no additional sanctions be imposed on Chesson by this Court.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___31st___ day of July 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge

15